J-A17012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY COOK | : | No. 1882 EDA 2023 |

Appeal from the Order Entered June 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000890-2023

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 13, 2024**

The Commonwealth of Pennsylvania appeals from the order granting the motion to suppress evidence filed by Rodney Cook ("Appellee"). We reverse and remand for further proceedings.

The trial court summarized the background of this matter as follows:

[Appellee] was under the supervision of the Pennsylvania Parole Board when on December 27, 2022, his parole agent, Riny Kanneh, . . . received an anonymous text that [Appellee] was seen in possession of a firearm. Thirteen days later, Agent Kanneh received another text that [Appellee] pulled out a gun and threatened an individual, and that person obtained a [protection from abuse ("PFA")] order against [Appellee]. There was no further corroboration [as to] the text messages or the PFA order contained in the affidavit of probable cause.

Agent Kanneh ordered [Appellee] to report to her office on January 12, 2023, and he complied. [Appellee] was taken into custody, advised why he was being arrested, and searched. [Appellee] had a key chain on his person with a key fob on it. He denied having a car that he drove to the parole office on that day.

Agent Kanneh, however, already had information from fellow agent and supervisor, Amanda Tarby, who had seen [Appellee] arrive, exit[,] and lock a black two-door Nissan with heavy tint before entering the building. Based on this, Agent Kanneh went outside, pressed the unlock button on the key fob, and located the Nissan. She then opened the door and saw a firearm in plain view. A warrant to search the Nissan was later applied for [by the Office of the Attorney General] and approved while the car was held.

Findings of Fact and Conclusions of Law, 6/27/23, 3-4.

The Commonwealth thereafter charged Appellee with one count each of possession of firearm prohibited, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia. On the date when Appellee was scheduled to appear for a non-jury trial, his counsel presented to the trial court a motion to suppress evidence based upon the four corners of the search warrant.[1] Particularly, after being asked by the trial court whether it was a "four corners" motion, defense counsel responded affirmatively. *See* N.T. Motion to Suppress, 5/23/23, at 3. Likewise, when asked if there was a need to sequester witnesses, Appellee's attorney responded: "This – so we – this is a sort of unique situation. It's a four corners motion, so I don't think --" before the court replied, "Got it." *Id*. at 5.

Since the challenge was premised solely upon what was stated in the search warrant, the parties stipulated to the entry of the warrant as the entire body of evidence for the suppression hearing, and then provided argument as to their respective positions. *Inter alia*, Appellee contended that the initial, warrantless search of the vehicle by Agent Kanneh was not supported by

---

[1] The written motion was served upon the Commonwealth via email the day before, but the certified record does not reflect that it was ever filed.

reasonable suspicion,[2] and therefore the subsequent search warrant, which relied upon the agent's observations, lacked probable cause. The trial court took the matter under advisement and subsequently entered an order on June 27, 2023, concluding that the warrant was improperly issued.

The Commonwealth timely appealed and certified therein that the trial court's ruling substantially handicapped the prosecution. **See** Pa.R.A.P. 311(d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). The court directed the Commonwealth to comply with Pa.R.A.P. 1925(b), and it timely filed a statement of errors complained of on appeal. The court then issued a responsive opinion.

The Commonwealth presents the following issues for our review:

Did the [trial] court err in suppressing evidence when

(a) the four corners of the search warrant and accompanying affidavit plainly demonstrated a substantial basis for the issuing magistrate's findings of probable cause that [Appellee] had in his car a firearm he was legally prohibited from possessing; and

(b) under the totality of the circumstances—including a recent, specific, and non-anonymous report of [Appellee] brandishing and threatening a particular person with a gun and [Appellee]'s

---

[2] This standard applies because "parolees agree to endure warrantless searches based only on reasonable suspicion in exchange for their early release from prison. Thus, agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search." **Commonwealth v. Rosendary**, 313 A.3d 236, 247 (Pa.Super. 2024) (citations omitted).

repeated and demonstrably false denials of having driven a car to a meeting with his parole officer—[Appellee]'s parole officer had reasonable suspicion to believe that his car contained a gun or other contraband or other evidence of violations of the conditions of supervision?

Commonwealth's brief at 4.

We begin by setting forth the relevant tenets of law.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The [trial] court's findings of fact bind an appellate court if the record supports those findings. The [trial] court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the [trial] court properly applied the law to the facts.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa.Super. 2016) (citation omitted). In this case, the only evidence introduced at the hearing was the search warrant application, which we review in more detail below.

As to the issuance of warrants, Pa.R.Crim.P. 203 provides as follows in pertinent part:

(B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

. . . .

(D) At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

- 4 -

Pa.R.Crim.P. 203.

Additionally, this Court has stated:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. . . . A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

***Commonwealth v. Manuel***, 194 A.3d 1076, 1081 (Pa.Super. 2018) (*en banc*) (cleaned up).

Beyond challenging the sufficiency of a search warrant, defendants also have the right to challenge omissions or ambiguities in the affidavit of probable cause itself. ***See Commonwealth v. James***, 69 A.3d 180, 189 (Pa. 2013). However, a magistrate is not required to "anticipate or rule pre-search on any conceivable suppression issue counsel may later assert" in evaluating whether there is probable cause. ***Id***. at 190. Furthermore, "a reviewing court may not conduct a *de novo* review of the issuing authority's probable cause determination but, instead, is tasked simply with the duty of ensuring the issuing authority had a substantial basis for concluding that probable cause existed." ***Commonwealth v. Shackelford***, 293 A.3d 692, 698 (Pa.Super. 2023) (cleaned up).

Here, the trial court concluded that the warrant issued by the magisterial district judge was not supported by probable cause. Thus, we begin by reviewing the relevant portion of the affidavit, as presented to the issuing authority:

On Thursday, January 12, 2023, at approximately 1400 hours, Pennsylvania Office of Attorney General (PAOAG) Supervisory Agent Justin Clarke (SSA Clarke) and Special Agent Andrea Guse (SA Guse) were contacted by PAOAG Task Force Officer John Murphy (TFO Murphy). TFO Murphy informed SA Guse that Pennsylvania Parole Board agents had just discovered a Glock-style firearm from a Nissan Altima (PA registration LPC-0669), which had been driven and parked at the Philadelphia parole district office, 2630 N. 13th Street, Philadelphia, PA 19133. SSA Clarke, SA Guse, TFO Murphy and Special Agent Kyle Boyd (hereinafter "SA Boyd") responded to 2630 N. 13th Street, Suite 200, Philadelphia, PA 19133.

SA Boyd conducted the following typed statement from Parole Agent Riny Kanneh (hereinafter "PA Kanneh"):

Q. Agent can you tell me your tour of duty and assignment?

A. Parole Agent [level one] assigned to the Philadelphia District Office, State Parole.

Q. Were you working alone or with a partner?

A. With Supervisor Wilkerson and Agent Monroe and Agent Wines.

Q. During your tour of duty, did you come into contact with a male identified as [Appellee]?

A. Yes.

Q. Can you tell me how the interaction began?

A. On December 27, 2022 I received an anonymous text message stating that [Appellee] was seen in possession of a

- 6 -

firearm in violation of [his] terms of state parole. On Monday January 9th I received another text message that [Appellee] had threatened an individual by pulling out a firearm. I had prior knowledge that this individual had filed a [PFA] order against [Appellee] on January 9th 2023 that same day as I had received the information of [Appellee] brandishing a firearm and making threats. Based on the issuance of the [PFA] order and the allegations involving firearms offenses I placed a call to [Appellee] on January 11, 2023 requesting that he report to the parole office at 2630 North 13th Street. On January 12, 2023 at 12:22 PM he reported as instructed and at 1:30 PM he was brought back into the duty area and placed into custody. After that [Appellee] met with Supervisor Wilkerson and was advised why he was placed into custody and searched. Per state parole policy, [he] was searched and was in possession of US currency along with a bundle of keys including a blue in color key fob, an Apple Watch and a cell phone. During the course of Supervisor Wilkerson's discussion with [Appellee], I specifically asked him how he came to the parole office and if he had driven a vehicle here. [He] repeatedly denied operating a vehicle today. I asked him what the blue key fob was for and his reply was "It was for a car but I don't have a car, I didn't drive here." I went outside of the parole building and clicked the key fob and immediately observed the key fob turn the lights on and beep the horn of a black two door Nissan heavily tinted with PA registration LRC0669. I already had received information that a vehicle matching this description was the vehicle operated by [Appellee]. This car was located on the 2600 block of North 13th Street across the street from the state parol[e] building. I utilized the keys and checked the door handle and opened the door of the Nissan Altima. I immediately observed what I knew to be a black in color semi-automatic firearm. Agent Wines made the firearm safe and we secured the vehicle pending a search and seizure warrant.

Q. Is there anything you would like to add to this statement?

A. No[.]

SA Boyd also conducted the following typed statement with Parole Supervisor Amanda Tarby (hereinafter "Supervisor Tarby"):

Q. Agent can you tell me your tour of duty and assignment?

A. Supervisory Parole Agent[,] assigned to the Philadelphia District Office, State Parole.

Q. Were you working alone or with a partner?

A. With Supervisor Wilkerson.

Q. During your tour of duty, did you come into contact with a male identified as [Appellee]?

A. Yes.

Q. Can you tell me how the interaction began?

A. On January 12, 2023 at approximately 12:20 PM, as I was leaving the state parole parking lot, I observed the male subsequently identified as [Appellee] closing the door of a black in color Nissan with heavy tint and utilizing a set of keys at the vehicle and the lights acknowledge him locking the vehicle. Approximately [forty-five] minutes later, I was in the duty area and observed Supervisor Wilkerson in a heated exchange with a parolee who I immediately recognized as the male I had observed previously exiting the black in color Nissan with heavy tint. I assisted securing [Appellee] in the duty area.

Q. Is there anything you would like to add to this statement?

A. No[.]

Your affiant notes that there are multiple surveillance cameras posted around the parole building located at 2630 N. 13th Street, Philadelphia, PA 19133. TFO Murphy viewed the footage from these surveillance cameras and observed [Appellee] arrive in a black Nissan sedan and park on N. 13th Street, near the corner of W. Huntingdon Street, exit the driver's seat of the black Nissan sedan, and walk towards the front entrance of the parole office, 2630 N. 13th Street, Suite 200, Philadelphia, PA 19133. TFO Murphy reviewed the surveillance camera footage until parole agents approached and entered the vehicle. TFO Murphy noted he did not observe anyone enter or exit the Nissan sedan after [Appellee] exited the vehicle and entered the parole office. Your affiant has requested that the surveillance video be preserved and turned over to investigators.

Based upon these statements and review of parole surveillance video, the Nissan Altima has been secured pending the approval of the search warrant.

Based upon these facts and circumstances, your affiant is requesting the approval of this search warrant to search the Nissan Altima, PA registration LPC-0669 and seize any and all firearms, firearms-related material, ammunition, firearm paperwork, proof of residency, and any and all illegal contraband.

Application for Search Warrant and Authorization, 1/12/23, at unnumbered 3-5 (unnecessary capitalization omitted).

With this background in mind, we return to the Commonwealth's claim on appeal. It argues that the court erred in granting suppression because "the four corners of the search warrant plainly disclosed a substantial basis for the magistrate's finding of probable cause." Commonwealth's brief at 12. The Commonwealth maintains that here, Appellee presented a "four corners" challenge to the warrant, which limited the court to considering only the warrant application and the affidavit of probable cause, not any additional evidence. *Id*. (citing Pa.R.Crim.P. 203(D)). It contends that rather than merely confirming whether the issuing magistrate had a substantial basis for finding probable cause, the court instead performed an improper *de novo* review and wrongly discounted Agent Kanneh's observation of the handgun upon its belief that there was an illegal prior search. *Id*. (citing **Shackelford**, 293 A.3d at 698).

The Commonwealth further highlights case law standing for the proposition that a magisterial district judge is not required to anticipate constitutional challenges in issuing a warrant. *Id*. at 13 (citing **James**, 69

A.3d at 190). Rather, the magistrate here correctly found that there was a "fair probability that contraband or evidence of a crime would be found" because Agent Kanneh personally saw a handgun in Appellee's vehicle. *Id*. at 14. Finally, the Commonwealth advocates that Agent Kanneh's initial search of Appellee's vehicle was supported by reasonable suspicion, primarily based on the text messages the agent received and Appellee's dishonesty about driving a car to the parole office. *Id*. at 14-20.

In its Rule 1925(a) opinion, the trial court concluded that "both the initial warrantless, and subsequent warrant-based, searches of [Appellee]'s vehicle were invalid." Trial Court Opinion, 8/16/23, at 11. It determined that Agent Kanneh merely had two uncorroborated, anonymous text messages supporting the claim that Appellee possessed a firearm, which amounted to "bald, anonymous information." *Id*. The court additionally noted that the agents did not observe any illegal activity, and moreover did not have information showing a nexus between any firearm and Appellee's car. *Id*. at 11-13. It opined that "the warrantless search of the vehicle was illegal, and the evidence subsequently seized pursuant to the warrant comprised fruit of the poisonous tree." *Id*. at 13. Hence, the court found that it properly granted Appellee's motion to suppress.[3]

---

[3] In his brief, Appellee appropriates the analysis of the trial court's Rule 1925(a) opinion nearly word for word, including footnotes. *See* Appellee's brief at 12-21.

Upon review, we agree with the Commonwealth that the trial court erred in suppressing the search warrant issued in this matter. Initially, although Appellee submitted to the court a written motion to suppress at the outset of the hearing, he subsequently confirmed verbally that it was a "four corners" motion and directed that no witnesses needed to be sequestered. In reliance upon those representations, the Commonwealth did not call any witnesses. Thus, by his statements at the hearing, counsel proffered a limited and general challenge as to the sufficiency of warrant, bringing it within the purview of Rule 203(D). As discussed, that rule precludes the court from considering any additional evidence beyond the information contained within the affidavit of probable cause.

Considering Appellee's motion in the proper light, we find that the search warrant was plainly supported by probable cause. To begin, Agent Kanneh had reasonable suspicion to conduct a warrantless search of Appellee's car, contrary the trial court's findings. *See Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa.Super. 2018) ("Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot[.]"). Agent Kanneh received two separate text messages on different days, both indicating that Appellee had possessed a gun, which he is prohibited from doing while on parole. Relevant here, the trial court concluded that the second

message, concerning Appellee threatening a victim with a firearm, was made anonymously.

However, this is refuted by the affidavit of probable cause, which states that Agent Kanneh knew who the sender was because the agent "had prior knowledge that this individual had filed a [PFA] order against [Appellee] on . . . that same day[.]" Application for Search Warrant and Authorization, 1/12/23, at unnumbered 4. Thus, the agent's suspicions were not reliant upon purely "bald, anonymous information." Trial Court Opinion, 8/16/23, at 11. Further, the affidavit expounded that another parole agent observed Appellee parking his vehicle at the office and locking it. After being questioned, Appellee attempted to disassociate himself from the car by lying about whether he had driven it and why he had a key fob on his person.

Collectively, these articulable facts provided Agent Kanneh with reasonable suspicion that Appellee was attempting to hide a firearm inside of his vehicle. *See Gould*, 187 A.3d at 935 (stating that a "parole officer's warrantless search of a parolee will be deemed reasonable, and the fruits of the search will be admissible in court, if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty").

Since the initial, warrantless search of the car was based upon facts that created reasonable suspicion, it is equally clear that the magistrate correctly issued the underlying search warrant. As noted, Agent Kanneh specifically

observed a handgun in Appellee's car, which he was not permitted to possess by law. Further, video surveillance confirmed that no one else entered or exited the vehicle in the time Appellee was with the agent. These facts were all expressly outlined in the affidavit. The issuing authority therefore had the grounds to find a "fair probability that contraband or evidence of a crime w[ould] be found" in Appellee's vehicle. *See Manuel*, 194 A.3d at 1081.

To the extent the trial court granted suppression by disregarding salient facts within the affidavit of probable cause, such as the Agent Kanneh's observation of the firearm, the court erred. Instead of ensuring that "the issuing authority had a substantial basis for concluding that probable cause existed," the court instead erroneously decided Appellee's constitutional arguments that were never considered by the magistrate. *See Shackelford*, 293 A.3d 692, 698. Accordingly, we reverse the order granting suppression.[4]

Order reversed. Case remanded. Jurisdiction relinquished.

---

[4] In light of the foregoing discussion, we need not address the Commonwealth's second issue specifically as presented, concerning whether Agent Kanneh had reasonable suspicion to perform her search of Appellee's car.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  11/13/2024